IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SERVICE CORPORATION INTERNATIONAL, | ) ) ) ) |
| *Plaintiff,* | ) ) No.  20 C 838 |
| v. | ) ) Judge Virginia M. Kendall |
| STERICYCLE, INC., | ) ) |
| *Defendant.* | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Stericycle Inc.'s Motion to Dismiss Plaintiff SCI's First Amended Complaint (Dkt. 71). For the reasons given below, Stericycle's Motion is granted with respect to Counts 2-33 and denied with respect to Count 1.

**BACKGROUND**

**A.  Procedural Background**

There is a history between these parties.  SCI first filed suit against Stericycle in February 2019 in the state court of Cook County, Illinois for breach of contract, unjust enrichment, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and Uniform Deceptive Trade Practices Act ("ICFA") based on many of the same allegations in the instant Amended Complaint. After that case was removed to this Court, Stericycle moved to dismiss. *See SCI v. Stericycle*, No. 1:19-cv-01960 (N.D. Ill.) (Dkts. 1, 17-18). SCI subsequently filed an amended complaint in that case, and Stericycle again moved to dismiss. *See* No. 1:19-cv-01960 at Dkts. 27,

36. The Court granted Stericycle's motion (*Id.* at Dkt. 52) and granted SCI time to amend its pleading if it chose to do so. *See Service Corp. Int'l v. Stericycle, Inc.*, 2020 WL 43017, at *6 (N.D. Ill. Jan. 4, 2020).

Within weeks, SCI filed a new action in Cook County, making many of the same allegations from the earlier case. After Stericycle again removed to this Court, it filed another motion to dismiss which was granted without prejudice for SCI to amend. [Dkt. 64]. SCI subsequently filed the operative Amended Complaint (Dkt. 65). SCI brings 33 claims of action against Stericycle: (1) breach of contract under Illinois law (Count I); (2) violation of the ICFA (Count II); (3) quasi-contract (Count III); and (4) state-specific consumer fraud claims (Counts 4-33). Stericycle now moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim. (Dkt. 71).

### B. Factual Background

The following factual allegations are taken from SCI's Amended Complaint [Dkt. 65] and are assumed true for the purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Defendant Stericycle is a medical waste disposal company which serves both large-quantity businesses, such as hospitals, and small-quantity businesses, such as individual doctor's offices. (Dkt. 65 ¶¶ 27-30). Small-quantity businesses are particularly important to Stericycle's business because they generate comparatively higher profit margins and account for 97% of Stericycle's customers and the majority of Stericycle's revenue. (Dkt. 65 ¶¶ 31-32). Between 2010 and 2016, SCI acquired

Alderwoods Group, LLC ("Alderwoods"), Keystone America, Inc. ("Keystone"), and Stewart Enterprises ("Stewart"), along with all the subsidiaries of each organization (collectively, "the subsidiaries"). (*Id.* ¶¶ 14–22). All of the subsidiaries were designated small-quantity businesses by Stericycle. (*Id.* ¶ 5).

Stericycle offered small-quantity customers like the subsidiaries the "Steri-Safe" service, a fixed-fee based service whereby the small-quantity customer paid a monthly subscription fee in exchange for ongoing medical waste disposal from Stericycle as laid out in the "Steri-Safe Service Agreement." (*Id.* ¶¶ 29, 32). The Steri-Safe Service Agreement includes standard terms and conditions including pricing language that allows Stericycle to adjust its prices to reflect additional costs caused by changes in regulations or any other increases in its operating costs. (*Id.* ¶ 35). Stericycle had a policy not to change or remove this term from a small quantity customer contract unless the customer and Stericycle specifically agreed to price increases. The subsidiaries agreed to and signed the Steri-Safe Service Agreement (¶45). Because the agreement auto-renewed, each subsidiary only signed the contract once. (¶46). Each subsidiary was issued a Stericycle Customer ID number (¶¶47-48). The Stewart subsidiaries entered into Steri-safe Agreements on or about 2007. Each Stewart, Alderwoods and Keystone subsidiary signed a Steri-safe contract between 2003-2017. (¶¶ 89, 91).

Stericycle systemically increased the Steri-Safe fixed fee by 18% every six to twelve months, a practice known as the Automated Price Increase ("API"). (¶¶ 4, 54, 58). Stericycle used software known as Tower and Steriworks to automate price

increases (*Id.* ¶¶ 59). The API was not based on any increased operational costs incurred by Stericycle and was applied by default. (¶¶ 42, 45, 48). Stericycle targeted the subsidiaries and small-quantity customers for the API because it deemed them comparatively less sophisticated, outfitted with smaller legal and accounting departments, and less able to dispute the justification for the price increases. (¶¶ 57).

Stericycle did not disclose to the subsidiaries that its API policy was not authorized by the form contract and did not communicate the basis for price increases to the subsidiaries (¶ 56, 69).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court accepts the complaint's factual allegations as true and draws all permissible inferences in Plaintiff's favor. *Schumacher*, 844 F.3d at 675 (quoting *Iqbal*, 556 U.S. at 678). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Seventh Circuit interprets this plausibility standard to mean that the plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Vanzant v. Hill's Pet*

*Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Schumacher*, 844 F.3d 676 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Iqbal*, 556 U.S. at 678)).

In addition, Federal Rule of Civil Procedure 9(b) requires all allegations of fraud to be "state[d] with particularity," although "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This heightened pleading requirement protects against the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) requires that the plaintiff state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Svc's, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). In other words, the plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019)); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (quoting *Windy City*, 536 F.3d at 668). Each instance of fraud must be alleged with "precision and

some measure of substantiation." *Menzies*, 943 F. 3d at 338 (quoting *U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016)).

## DISCUSSION

**I.      Consumer Fraud Claims (Counts 2, 4-33)**

Counts 2 and 4-33 of SCI's Amended Complaint are brought under various state consumer fraud claims. SCI claims that its basis for each of these claims is a "fraud by non-disclosure" theory wherein Stericycle concealed the basis for automatic price increases from the subsidiaries (Dkt. 65 ¶ 130).

**A. ICFA Claim (Count 2)**

Stericycle first argues that SCI has failed to plead an Illinois nexus required to state a claim under the ICFA. (Dkt. 72 at 4); *see Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 854 (Ill. 2005) (holding the ICFA does not have extraterritorial effect and applies to nonresident claimants only when the circumstances of the disputed transaction occurred "primarily and substantially" in Illinois.) SCI argues that it has adequately pled a nexus based on the allegations in its Amended Complaint (Opp. at 16-17) (citing Am. Compl. ¶¶ 26, 39).

There is no bright-line rule that governments when a non-resident plaintiff can bring an ICFA claim. *See Crichton v. Golden Rule Ins. Co.,* 576 F.3d 392, 396 (7th Cir. 2009). Some of the relevant factors include: (1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of

law provisions, if there are any; (7) where the allegedly deceptive statements were made; (8) where payments for services were to be sent; and (9) where complaints about the goods or services were to be directed. *See The Clearing Corp. v. Fin. and Energy Exch. Ltd.,* No. 09 C 5383, 2010 WL 2836717, *6 (N.D. Ill. July 16, 2010) (citing *Avery*, 835 N.E.2d at 854–855).

SCI's analysis of these factors relies largely on their allegations in Paragraph 26 of the Amended Complaint (*see* Opposition at 16). For example, SCI argues that it alleges that the SteriWorks scheme was developed and operated from Illinois, Stericycle's customer service and call centers were located in Illinois, and that SCI made payments to Stericycle pursuant to invoices generated in Illinois. However, as Stericycle identifies in its Reply (Dkt. 85), those allegations do not appear in the Amended Complaint. Paragraph 26 only alleges:

> Defendant STERICYCLE, INC. is a Delaware corporation with its principal corporate offices in Lake Forest, Illinois. Stericycle continues to be in the business of providing medical waste disposal services in the United States and abroad. Stericycle can be served with this amended complaint by and though its counsel of record.

Dkt. 65 at ¶ 26. And in fact, SCI specifically does not allege that Stericycle's customer service and call centers were located in Illinois. (*Id.* at ¶¶ 71-72, 75). Nor does SCI allege that any specific subsidiary actually utilized the customer complaint department. SCI thus does not state a nexus for its ICFA claim.

The ICFA claim fails for the additional reasons that SCI has not pled its ICFA claim with the particularity required by Rule 9(b) and is duplicative of its breach of contract claim. SCI has not rectified the issue with its earlier complaint: that it only

alleges a "laundry list of non-specific but purportedly fraudulent conduct." *See SCI v. Stericycle*, 2021 WL 2433704 (N.D. Ill. June 15, 2021). Although the Court identified that SCI's earlier complaint lacked any allegations about specific fraudulent behavior directed to the subsidiaries and any allegations about when the fraudulent behavior took place, SCI does not resolve these pleading deficiencies in this Amended Complaint. SCI's cursory allegations do not meet Rule 9(b)'s particularity standard, as required for deceptive business practices claims. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (plaintiffs "must specifically allege the who, what, when, where, and how of the fraud.") (citation omitted). SCI's pivot to a "fraud by non-disclosure" theory does not save its claim. "A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery*, 835 N.E.2d at 844; *see also Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract."). The allegations SCI points to in its Opposition – that Stericycle owed SCI a duty to disclose the "existence of the API scheme (Opp. at 12)—essentially boils down to an allegation that Stericycle did not disclose the alleged contractual breaches. It's allegations of concealment are neither pled with particularity nor untangled from its breach of contract claim.

## B. State Consumer Fraud Claims (Counts 4-33)[1]

Stericycle also moves to dismiss Counts 4-33 of SCI's Amended Complaint, which are causes of action brought under state consumer fraud statutes. As an initial matter, SCI has agreed to dismiss Counts 14, 19, and 28 (Opp. at 18 n.3). Those claims are dismissed. The remaining state law claims are dismissed both because SCI failed to respond to the substance of Stericycle's arguments and because SCI has not adequately pled these claims.

As this Court previously warned SCI, it would not do its work for it. *See SCI v. Stericycle*, 2021 WL 2433704 at *4 ("When presented with a plausible reason to dismiss a complaint, the judge will not shoulder the plaintiff's burden to try and discovery grounds to preserve a complaint.") This is the second time SCI has elected not to substantively respond to a motion to dismiss the claims it pled because of the burden associated with doing so. SCI asks the Court to delay a decision on these claims "after a more detailed briefing at a later time." (Opp. at 11). SCI is the master of its complaint—it can choose what claims to bring and must adequately plead the claims it brings in order to survive a 12(b)(6) motion to dismiss. *See generally* Rules 8-9, 11-12. Having chosen to bring claims pursuant to multiple state consumer fraud claims, it is not appropriate to ask the Court to simply ignore Stericycle's arguments and preserve those claims for a later date. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461,

---

[1] The Amended Complaint includes two of "Count 32" – herein, Count 32 shall mean the claim brought pursuant to the Washington Consumer Protection Act, while Count 33 shall refer to the claim brought pursuant to the Wisconsin Unfair and Deceptive Trade Practices Act.

466 (7th Cir. 2010) (affirming district court's dismissal of complaint where plaintiff failed to respond to movant's specific arguments).

Stericycle argues that Counts 5 [California] and Count 12 [Kansas] should be dismissed because those statutes only apply to natural persons.[2] SCI does not address this argument, and it is waived.

Second, Stericycle argues that Counts 9, 11, 13, 17, 18, 26, 27 and 31 should be dismissed because those state's statutes do not apply to business transactions.[3] Here, SCI attempted to address Count 9 [Georgia] by arguing that it allows business entities to sue where the deceptive practices are directed at natural persons. (Opp. at 19). It concludes that Stericycle's actions were directed at natural persons because the Subsidiaries "passed these costs to consumers." (*Id.*) That allegation—that the Subsidiaries passed costs on to consumers—appears nowhere the 236 paragraphs of SCI's Amended Complaint. Because SCI concedes that the law is "substantively similar in this regard in [California, Kansas, Indiana, Kentucky, Mississippi, Missouri, Ohio, Oklahoma, and Virginia]" (Opp. at 19, n.4) it has failed to state a

---

[2] *See, e.g.*, Kan. Stat. Ann. § 50-624(b) (defining "consumer" under the Kansas Consumer Protection Act as an "individual, husband and wife, sole proprietor, or family partnership"); Cal. Civ. Code § 1761(d) (defining "consumer" under the California Consumer Legal Remedies Act as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes"); *Cooper v. Simpson Strong-Tie,* 460 F.Supp.3d 894, 912 (N.D. Cal. 2020) (California); *Wayman v. Amoco*, 923 F.Supp. 1322, 1363 (D. Kan. 1996) (Kansas).

[3] *See, e.g.,* Ga. Code Ann. § 10-1-393(a)(10); Ind. Code § 24-5-0.5-2(a)(1); Ky. Rev. Stat. Ann. § 367.220; Miss. Code Ann. § 75-24-15(1); Mo. Rev. Stat. § 407.025- 1(1); Ohio Rev. Code Ann. § 1345.01(A); Okla. Stat. tit. 15 § 752(2); Va. Code Ann. § 59.1-198. *In re Dealer Mgmt.*, 362 F.Supp.3d 510, 556 (N.D. Ill. 2019) (Georgia); *Powerscreen v. D&L Equip.,* 661 F.Supp.2d 705, 716 (W.D. Ky. 2009) (Kentucky); *River Region Med. v. Am. Lifecare*, 2008 WL 748359, *5 (S.D. Miss. 2008) (Mississippi); *Flex Homes v. Ritz-Craft*, 491 F. App'x 628, 635 (6th Cir. 2012) (Ohio); *Lumber 2 v. Ill. Tool Works*, 261 P.3d 1143, 1149 (Okla. 2011) (Oklahoma); *Murray v. Royal Constr.*, 61 Va. Cir. 643, 648 (Va. Cir. Ct. 2002) (Virginia).

claim under those state statutes. Therefore, even if not waived – and SCI is skating on thin ice apart from Count 9 – Counts 9, 11, 13, 17, 18, 26, 27 and 31 are dismissed.

Finally, Stericycle argues that Counts 4, 6, 9, 16, 20, 22, 24, 29 and 32 should be dismissed because they require SCI to plead that there was an impact on the consuming public. (Dkt. 72 at 11-12).[4] SCI argues in its Opposition that there was such an impact (Opp. at 19), but again, that allegation does not appear in the Amended Complaint. SCI points to its allegations that Stericycle targeted "small quantity consumers." (Opp. at 19, Dkt. 65 at ¶ 57). SCI makes no state specific allegations, and the Colorado case it cites (*NetQuote v. Bryd*, 504 F. Supp. 3d 1126 (D. Colo. 2007)) in support requires that the misrepresentations be "directed to the market generally." But SCI alleges that it was the subsidiaries that were the victims of the purported fraudulent non-disclosure (Dkt. 65 at ¶¶ 56, 60, 70). Without more, this does not state a claim under statutes requiring an impact on the consuming public.

To the extent that SCI believes that additional "nuance of each state's particular statute" is required to address whether these claims were properly pled, it chose not to present any of that nuance in its Opposition. (Opp. at 11) ("Stericycle's undeveloped arguments regarding the various state consumer fraud statutes … fail

---

[4] *See also, e.g., Stonebridge Collection v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015) (Arkansas); *Pryor v. CCEC*, 571 S.E.2d 454, 455 (Ga. Ct. App. 2002) (Georgia); *Bhatia v. 3M*, 323 F.Supp.3d 1082, 1102 (D. Minn. 2018) (New York); *Khoday v. Symantec*, 858 F.Supp.2d 1004, 1017 (D. Minn. 2012) (Minnesota*); Triple 7 v. Intervet*, 338 F.Supp.2d 1082, 1087 (D. Neb. 2004) (Nebraska); *Princeton Healthcare v. Netsmart New York*, 29 A.3d 361, 365 (N.J. Super. Ct. App. Div. 2011) (New Jersey); *Feeley* (South Carolina); *Michael v. Mosquera Lacy*, 200 P.3d 695, 700 (Wash. 2009) (en banc) (Washington)

to account for the nuances in the various state laws. While Stericycle is wrong about the law, deciding these issues is better suited after more detailed briefing at a later time.") The time for SCI to respond to Stericycle's motion was in its Opposition.

Waiver aside, these state consumer fraud claims fail for the same reason SCI's ICFA claim fails—failure to make the particularized pleading required by Rule 9(b).[5] Each of these claims fails to allege fraud with the required specificity. SCI's argument to the contrary—that Stericycle is "aware of the legal theory and underlying facts asserted against it"—misstates the heightened federal pleading standard applicable here. *See* Opp. at 18, *citing People ex rel. Fahner*, 430 N.E. 2d.

---

[5] *Porto v. Allstate Property and Casulaty Ins. Co.*, No. 4:17CV00440 JLH, 2017 WL 4640432, at *4 (E.D. Ark. Oct. 16, 2017) (citing *Universal Coop., Inc. v. AA Flying Serv., Inc.*, 710 F.3d 790, 795 (8th Cir. 2013)) (Arkansas); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (California); *Stephenson v. Hartford Life and Annuity Ins. Co.*, No. 02 C 3917, 2003 WL 22232968, at *5 (N.D. Ill. Sept. 26, 2003) (Colorado); *ARMOUR Capital Mgmt. LP v. SS&C Techs., Inc.*, No. 3:17-cv-00790 (JAM), 2018 WL 1368908, at *7 (D. Conn. Mar. 16, 2018) (Connecticut); *Lewis v. Mercedes-Benz USA, LLC*, 19-CIV-81220-RAR, 2012 WL 1216897, at *29 (S.D. Fla. Mar. 30, 2021) (Florida); *Conti v. Am. Honda Motor Co., Inc.*, CV 19-02160-CJC(GJSx), 2019 WL 10371067, at *5–6 (C.D. Cal. Oct. 17, 2019) (Georgia); *Tuttle v. Treasure Valley Marine, Inc.*, No. 1:15-cv-00314-BLW, 2016 WL 3198230, at *2 (D. Idaho Jun. 8, 2016) (Idaho); *Outzen v. Kapsch Trafficcom USA, Inc.*, No. 120-cv-01286-TWP-MJD, 2012 WL 914021, at *10–12 (S.D. Ind. Mar. 10, 2021) (Indiana); *Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 WL 374145, at *10 n. 2 (N.D. Ill. Feb. 1, 2016) (Kansas); *Johnson v. Int'l Labs., LLC*, No. 7:19-cv-0004-GFVT, 2019 WL 1877289, at *3 (E.D. Ky. Apr. 26, 2019) (Kentucky); *Rick v. Profit Mgmt. Assocs., Inc.*, 241 F Supp. 3d 215, 225 (D. Mass. 2017) (Massachusetts); *Friend*, No. 18 CV 7644, 2019 WL 2482728, at *2 (Minnesota); *Young v. Bristol-Myers Squibb Co.*, NO. 4:16-CV-00108-DMB-JMV, 2017 WL 706320, at *15–16 (N.D. Miss. Feb. 22, 2017) (Mississippi); *Friend*, No. 18 CV 7644, 2019 WL 2482728, at *2 (Missouri); *Free Green Can, LLC v. Green Recycling Enters., LLC*, No. 10-cv-5764, 2011 WL 2470463, at *6 (N.D. Ill. Jun. 20, 2011) (Nebraska); *Toromanova v. First Am. Tr. Serv. Solutions LLC*, No. 2:18-cv-01482-APG-VCF, 2019 WL 2996906, at *3–4 (D. Nev. Jul. 9, 2019) (Nevada); *Friend*, No. 18 CV 7644, 2019 WL 2482728, at *2 (New Jersey); *DeFrank v. Samsung Electronics Am., Inc.*, Civ. No. 19-21401 (KM) (JBC), 2020 WL 6269277, at *6 (D.N.J. Oct. 26, 2020) (New Mexico); *Friend*, No. 18 CV 7644, 2019 WL 2482728, at *2 (New York); *Tasz, Inc. v. Indus. Thermo Polymers, Ltd.*, 80 F. Supp. 3d 671, 680, 685 (W.D.N.C. 2015) (North Carolina); *Conti*, CV 19-02160-CJC(GJSx), 2019 WL 10371067, at *5–6 (Ohio); *Parrish v. Bank*, No. CIV-15-0913-HE, 2016 WL 3906814, at *2 – 3 (W.D. Okla. 2016) (Oklahoma); *Flores v. FCA US LLC*, No. 20-10972, 2021 WL 1122216, at *16 (E.D. Mich. Mar. 24, 2021) (South Carolina); *Gonzalez v. State Farm Lloyds*, 326 F. Supp. 3d 346, 350 (S.D. Tex. 2017) (Texas); *Murphy v. Capella Educ. Co.*, 589 Fed. Appx. 646, 656–57 (4th Cir. 2014) (Virginia); *Friend*, No. 18 CV 7644, 2019 WL 2482728, at *2 (Washington); *Miles v. Am. Honda Motor Co., Inc.*, No. 17 C 4423, 2017 WL 4742193, at *3 (N.D. Ill. Oct. 19, 2017) (Wisconsin).

1005, 1010 (1981). To the extent that the Court has found that the ICFA claim was not pled with particularity and is impermissibly duplicative of SCI's breach of contract claim (*see supra*), the state claims are dismissed for the same reasons.

II.     **Breach of Contract Claim (Count 1)**

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotation marks omitted).

SCI has adequately pled the performance, manner of the breach, damages, and some contract terms. *See SCI v. Stericycle*, 2020 WL 43017 (N.D. Ill. Jan. 4, 2020). The parties' dispute therefore remains the same: whether SCI has sufficiently pled the existence of contracts between Stericycle and the subsidiaries. SCI concedes it cannot plead exact contract prices, contract effective dates, the quantity of unlawful alleged price increases, the magnitude of any alleged unlawful price increases, and the duration of the alleged unlawful price increases (Dkt. 65 at ¶100).[6]

Under the requirements of notice pleading, the amended complaint must provide Stericycle with "fair notice of what the claim is and the grounds upon which

---

[6] SCI argues in its briefing that this is not a "typical" lawsuit because Stericycle has been a defendant in other lawsuits involving API and thus Stericycle is "well-aware of the allegations against it." (Opp. at 1). However, on a motion to dismiss the Court will not look outside the pleadings and has only considered if *SCI* has adequately pled its claims—an analysis that does not include nor require any information about what nonparties have pled against Stericycle in other litigation.

it rests." *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (internal quotation marks omitted). In its Amended Complaint, SCI has added sufficient factual detail to move it across the line and state a plausible claim when drawing all reasonable inferences in SCI's favor. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). SCI has pled that the Stewart subsidiaries entered into Steri-safe contracts on or about the year 2007 (Dkt. 65 ¶ 107); the Keystone subsidiaries entered into contracts on our about the year 2003 (*Id.* ¶ 109); and the Alderwoods subsidiaries entered into contracts on or about 2003 (*Id.* ¶ 111). It has alleged that the contracts auto-renewed each year, and continued until May 2013 (for the Stewart subsidiaries) (*Id.* ¶ 107); on or about 2010 (for the Keystone subsidiaries) (*Id.* ¶ 109); and on or about 2006 (for the Alderwoods subsidiaries) (*Id.* ¶ 111). It further alleges that those auto-renewing contracts were breached each time Stericycle charged APIs that were not allowed by those contracts. (*Id.* ¶ 111, 123). To provide further context to Stericycle about these contracts, SCI alleged that the subsidiaries were assigned Stericycle ID numbers when entering into contracts, and provided those ID numbers (*Id.* ¶ 48, 115). These Stericycle ID numbers were assigned when a subsidiary entered into a contract with Stericycle (*Id.* ¶ 117). Under the liberal pleading standard of Rule 8, this is sufficient to plead the existence of these contracts and defeat Stericycle's motion to dismiss this claim.

Stericycle argues that the statute of limitations has run as to the Keystone and Alderwoods subsidiaries (Dkt. 72 at 14) because SCI's allegations are that those subsidiaries' contracts ended more than 10 years before SCI first filed suit. While the

affirmative defense of statute of limitations *may be* raised in a Rule 12(b)(6) motion, it is also true that as an affirmative defense, it does not need to be addressed in the complaint. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). When determining whether to grant a motion based on statute of limitations, the question is not whether the plaintiff "allege[d] facts that tend to defeat affirmative defenses"; instead, the "right question is whether it is possible to imagine proof of the critical facts consistent with the allegations actually in the complaint." *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 628 (7th Cir. 2003); see also *Nasrabadi v. Kameli*, 2019 WL 2173791, at *4 (N.D. Ill. May 20, 2019) ("As long as the Court can imagine a scenario in which the claim is timely, it is improper to dismiss it on the pleadings." (internal quotation marks omitted)). Because it is plausibly alleged that the subsidiaries did not discover the alleged breaches until later, the Court will not dismiss the breach of contract claim based on a statute of limitations affirmative defense at this stage of the proceedings.

### III.     Quasi-Contract Claim (Count 3)

SCI also brings a claim for quasi-contract, pled in the alternative to its breach of contract claim. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("Under th[e] doctrine [of pleading in the alternative], a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative.") The Court has found that SCI has adequately pled its breach of contract claim, and the quasi-contract claim is thus dismissed.

## **CONCLUSION**

For the foregoing reasons, Stericycle's Motion to Dismiss (Dkt. 71) is granted in part and denied in part. Counts 2-33 of the Amended Complaint are dismissed. SCI's breach of contract claim (Count 1) survives.

_____
Virginia M. Kendall
United States District Judge

Date: November 10, 2021